UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KEITH ERIC WEBB, | ) | |
| | ) | Case No. 1:20-cv-180 |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Judge Atchley |
| | ) | |
| BRIAN DAVIS & CITY OF JASPER, | ) | Magistrate Judge Steger |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment [Doc. 34] of the City of Jasper and Motion for Summary Judgment [Doc. 37] of Brian Davis. Because Plaintiff has not shown that Defendant Davis deprived him of either his right to be free from arrest without probable cause or his right to equal protection, Defendant Davis is entitled to qualified immunity as to Plaintiff's federal claims. In the absence of an underlying constitutional violation, the City of Jasper is likewise entitled to judgment in its favor as to Plaintiff's federal claims. For reasons that follow, the Motions for Summary Judgment [Doc. 34 & 37] by Defendants City of Jasper and Brian Davis will be **GRANTED**. Plaintiff's federal claims will be **DISMISSED WITH PREJUDICE** and his state law claims **DISMISSED WITHOUT PREJUDICE** to refiling.

I.     FACTUAL BACKGROUND

This action arises out of a traffic stop of Plaintiff Keith Webb's vehicle by Officer Brian Davis of the Jasper Police Department. The parties take vastly different views of the stop, but there is bodycam and dashcam footage that covers their interactions. On June 29, 2019, Officer Davis was working as a patrolman for the City of Jasper Police Department. [Doc. 46-2 at 19-20].[1] Davis

---

[1] For clarity and ease of reference, this Opinion cites to the CM/ECF-stamped document and page number of all documents in the record, rather than to any internal pagination.

was traveling south on Betsy Pack Road when he observed a vehicle approaching the stop sign at Betsy Pack and College Street. [*Id.* at 34]. Officer Davis saw the vehicle slow down at the stop sign, "roll through" the stop sign, and then make a right turn. [*Id.* at 36-37]. Davis testified that it was dusk, the sun was still out a bit, and he could see well. [*Id.* at 37].

The video likewise shows Mr. Webb's vehicle approach a stop sign, slow down, and turn right. [*See* Doc. 44 (Notice of Manual Filing), Dashcam Footage at 15:20:10]. Officer Davis follows the vehicle, activates his lights, and the vehicle promptly pulls over into a business parking lot. [*Id.* at 15:20:46]. Davis approaches the vehicle and informs Mr. Webb that he has run a stop sign. [Body Camera Footage 1, 1:17:48]. The exchange begins calmly, and Mr. Webb asks Davis not to shine the light in his face. [*Id.* at 01:17:52]. Officer Davis apologizes but declines to move the light, and requests Mr. Webb's driver's license and registration. [*Id.* at 01:18:05]. Mr. Webb has one hand up, presumably shielding his eyes from the light. Webb informs Davis that his license is in his bag which is in the middle of the seat and Davis says to go ahead and get it. [*Id.* at 01:18:11]. Webb tells Davis he doesn't want Davis to pull a gun. [*Id.* at 01:18:15]. Webb raises his other hand in the air as he says this. Davis responds that he is not going to pull a gun and tells Webb that "what you need to do first is lose this attitude." [*Id.* at 01:18:16].

There is some back and forth in which Webb repeatedly tells Davis to call his supervisor, Davis says there is no supervisor, and Davis reiterates his demand for the driver's license, insurance, and registration several times. At one point Officer Davis asks if Webb is refusing to provide his driver's license, insurance, and registration, and Webb says he is not refusing. After Webb again demands a supervisor be called, Officer Davis says he will be forced to take Webb into custody if he does not provide his driver's license, registration, and insurance. [*Id.* at 01:19:01]. Webb simultaneously says he is getting his documents and asks for Davis's name and

2

badge number. He then takes the bag from the other seat or center of the car and searches it, pausing briefly to look at a cell phone. Cell phone in hand, he continues to search his bag and hands his license to Davis. [*Id.* at 01:19:36]. Davis "snatches" the driver's license from Webb, which can be heard on the video.

Webb says "You ain't gotta snatch from me, see now you're snatching." [*Id.* 01:19:40]. As he says this, he places the bag back on the seat next to him, with his cell phone still in one hand. As Webb says this, Davis says: "I tell you what, go ahead and get out of the car, go ahead and get out of the car, here, here." He opens the door, pulls Webb by the arm out of the vehicle, and handcuffs him. [*Id.* at 01:19:46]. Just under 2 minutes elapsed between the time Davis approached the vehicle and the time he removed Mr. Webb from the vehicle and handcuffed him.

Mr. Webb was arrested and charged with disorderly conduct in violation of T.C.A. § 39-17-305 and failing to obey a traffic control device in violation of T.C.A. § 55-8-110. [Doc. 37-3]. The disorderly conduct citation states:

> When the above was ask for Drivers License, Registration, and his proof of insurance Keith Webb refused to comply and became belligerent towards myself. Mr. Webb then started to reach in between front seats to grab something and was pulled out of the vehicle and placed into custody.

[Doc. 37-3] (errors original). Mr. Webb was booked at Marion County jail and released less than an hour later. [Doc. 37-2]. His court appearance was reset several times. [Doc. 46-2 at 67-68]. The charges against Mr. Webb were dismissed at the last setting. [*Id.* at 66].

On June 29, 2020, Mr. Webb filed this action against Brian Davis, the City of Jasper, and the Jasper Police Department. He asserts six claims: Count 1 – Violation of Civil Rights Under 42 U.S.C. § 1983, Count 2 – False Arrest and False Imprisonment, Count 3 – Battery, Count 4 – Assault, Count 5 – Malicious Prosecution, and Count 6 – Intentional Infliction of Emotional Distress. As to the federal claim, he asserts that Officer Davis's actions were pursuant to a policy

3

or practice of the City of Jasper and/or due to the City's failure to provide proper training to Davis. He seeks compensatory damages in the amount of $100,000, $300,000 in punitive damages, and attorneys' fees and expenses.

On October 28, 2020, the Court ordered Plaintiff to show cause why his claims against the Jasper Police Department should not be dismissed, as it is a not a separate entity from the City of Jasper. [Doc. 15]. In response, Plaintiff agreed that the claims against the Jasper Police Department should be dismissed [Doc. 16]. An Order [Doc 18] dismissing those claims was entered.

On February 15, 2022, Defendant Davis filed a Motion for Summary Judgment [Doc. 44] and accompanying Memorandum [Doc. 45]. Davis construes Plaintiff's Count 1 as a "selective enforcement" claim under the Equal Protection Clause of the Fourteenth Amendment. [*Id.* at 7]. He argues Plaintiff cannot make the evidentiary showing required to support this claim, and that he is in any event entitled to qualified immunity. He also seeks dismissal of the state law claims. The City of Jasper also filed a Motion for Summary Judgment [Doc. 34] and accompanying Memorandum [Doc. 35]. The City argues that even if Plaintiff could establish a deprivation of his constitutional rights, he cannot demonstrate that a specific policy or procedure of the City was the moving force behind the violation.

Plaintiff responded in opposition to both these motions. According to Plaintiff, his Complaint asserts not only a claim for selective enforcement, but also a Fourth Amendment claim for false arrest. He argues Officer Davis did not have probable cause to arrest him for disorderly conduct and that Davis is not entitled to qualified immunity as to this claim. Plaintiff further argues there is a disputed material fact as to his selective enforcement claim, namely, whether Davis's actions were motivated by racial animus. As to the City of Jasper, Plaintiff contends that because the City's Chief of Police confirmed that Davis's actions were in accordance with City policy,

Plaintiff has shown that the constitutional deprivation was caused by a policy or procedure of the City.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But, where there is "'a videotape capturing the events in question,' the court must 'view the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there

is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56).

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### III.   ANALYSIS

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.*; *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that first inquiry in any § 1983 suit is to "isolate the precise constitutional violation" charged).

For Count 1, Plaintiff's Amended Complaint [Doc. 8] asserts a "Violation of Civil Rights Under 42 U.S.C. § 1983." [Doc. 8 at 6]. In this count, Plaintiff asserts he was deprived of liberty without due process and that the deprivation was motivated by racial animus and done on the basis

of race. [*Id.* at ¶¶ 67, 69]. He claims that Officer Davis's actions "in effecting the stop, arrest and imprisonment of Mr. Webb without lawful basis was pursuant to a policy or practice of the City of Jasper." [*Id.* at 70]. Plaintiff alleges that the Defendants' actions "had the effect of depriving Mr. Webb of his constitutional rights in violation of 42 USC § 1983." [*Id.* at ¶ 72]. Elsewhere, Plaintiff alleges there was no basis for his arrest and that the arrest was unlawful.

The parties dispute whether Plaintiff's Complaint asserts a Fourth Amendment claim for arrest without probable cause or only a selective enforcement claim.[2] Both parties rely on Rule 8 pleading standards, but the Sixth Circuit has made clear that "[o]nce a case has progressed to the summary judgment stage . . . the liberal pleading standards under *Swierkiewicz* and the Federal Rules are inapplicable." *Carter v. Ford Motor Co.*, 561 F.3d 562, 567 (6th Cir. 2009) (cleaned up). *Id*. At any stage, however, "[t]he issue in a challenge to the sufficiency of a pleading is notice." *Id*. The notice inquiry is made on a case-by-case basis. And where a complaint is ambiguous, the Sixth Circuit uses a "course of proceedings" test to determine whether the defendant had notice of plaintiff's claims. *Id.* The court has found, for example, that when a complaint was ambiguous, statements made by plaintiff and his counsel during depositions demonstrated that both sides understood the case to encompass claims "not explicitly set forth in the complaint." *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008).

In *Cummings v. City of Akron*, 418 F.3d 676, 681 (6th Cir. 2005), the court analyzed a complaint that included a single federal constitutional claim – "Count III – Deprivation of Civil Rights." *Id.* The substance of the claim was that by "seizing, beating, restraining and/or committing the actions described herein, Defendants deprived Plaintiff of his liberty under the Due Process

---

[2] While Plaintiff's Amended Complaint asserts a "due process" claim, the parties all present argument regarding a selective enforcement claim, which is "judged according to ordinary Equal Protection standards," *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000), rather than under the Due Process clause.

7

Clause of the Fourteenth Amendment." *Id.* The magistrate judge found that the complaint did not allege an unlawful warrantless arrest, so did not address the claim. *Id.* On appeal, plaintiff argued this claim was improperly rejected. *Id.* Defendants contended that the claim should not be entertained on appeal. *Id.* The Sixth Circuit disagreed, citing statements made by counsel for both parties which demonstrated that "both sides understood [plaintiff's] suit to encompass Fourth Amendment claims for 'unlawful entry' and 'excessive use of force.'" *Id.* Indeed, defendants sought summary judgment as to the very claims that were not explicit in the complaint.

In the parties' Joint Rule 26(f) Discovery Planning Conference Report and Discovery Plan [Doc. 17], Plaintiff summarizes his claims as follows:

> Plaintiff Keith Webb contends that he was unlawfully stopped in the City of Jasper by Officer Brian Davis of the Jasper Police Department on the evening of June 29, 2019. Subsequent to that stop, Mr. Webb was unlawfully arrested and imprisoned **without any probable cause**, for no legitimate reason, and for racially motivated reasons. Mr. Webb further asserts that the unlawful arrest and imprisonment was pursuant to policies, practices or customs of the City of Jasper and/or due to a lack of training and deliberate indifference to Mr. Webb's rights.

[*Id.* at 2] (emphasis added). Similarly, the City's case summary asserts that Davis's actions "were reasonable under the circumstances" and that Plaintiff's arrest "was supported by probable cause." [*Id.*]. Davis likewise asserts that probable cause existed for Plaintiff's arrest. [*Id.*]. In other words, all parties appear to have understood Plaintiff to be claiming that he was arrested without probable cause, which is the gravamen of a Fourth Amendment claim for false arrest. And the Sixth Circuit has held that "[s]ubsequent filings in a case may rectify deficiencies in the initial pleading." *Moore v. City of Harriman*, 272 F.23d 769, 772 (6th Cir. 2001).

The Amended Complaint is at best ambiguous, and the parties have presented no evidence relevant to the course of conduct analysis. It is certainly not enough to allege a "civil rights violation" or "§ 1983 claim" without alleging a constitutional deprivation or violation of other

federal law. And while Plaintiff's Complaint clearly challenges the lawfulness of his arrest, that allegation is consistent with his Equal Protection selective enforcement claim, so does not necessarily give notice of a Fourth Amendment claim. Indeed, the Complaint includes a single claim brought pursuant to 42 U.S.C. § 1983 and never mentions probable cause or the Fourth Amendment. On the other hand, the Complaint does allege that there was no basis for Mr. Webb's arrest. [Doc. 8 at ¶¶ 55, 57, 58]. And the Rule 26(f) report suggests the parties all knew Plaintiff was challenging probable cause for his arrest. Finally, the parties present substantive briefing on the Fourth Amendment claim. Accordingly, the Court will address Plaintiff's contention that Davis deprived him of his right to be free from arrest without probable cause, in violation of the Fourth Amendment.

In contrast, Plaintiff mentions in passing that "a malicious prosecution can result in a deprivation of Fourteenth Amendment rights, thereby establishing grounds for a Section 1983 claim." [Doc. 46 at 19]. As the Court has explained, 42 U.S.C. § 1983 is a vehicle for vindication of federal and constitutional rights, not an independent source of those rights. Plaintiff does not contend that he asserted a claim for malicious prosecution under the Fourth Amendment in his Complaint. He cannot do so in response to a summary judgment motion. *See Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (plaintiff may not raise a new legal claim in response to summary judgment).

### a. Qualified Immunity – Fourth Amendment Claim

To the extent Plaintiff has properly asserted a Fourth Amendment claim for arrest without probable cause, Davis asserts he is entitled to qualified immunity as to that claim. [Doc. 51 at 17]. "A government official is entitled to qualified immunity on a § 1983 claim if he is 'performing discretionary functions' and his conduct 'does not violate clearly established statutory or

9

Case 1:20-cv-00180-CEA-CHS   Document 63   Filed 12/30/22   Page 9 of 19   PageID #: 1111

constitutional rights of which a reasonable person would have known.'" *Malory v. Whiting*, 489 Fed. App'x 78, 82 (6th Cir. 2012). When a defendant raises qualified immunity, the plaintiff has the burden of establishing that the defendant is not entitled to the defense. *Id.* Determining whether a government official is entitled to qualified immunity is a two-step inquiry and the Court may begin with either step. *Id.* The plaintiff must demonstrate:

> First, that the official violated his constitutional rights. And second, that the violation was "clearly established at the time."

*Kalvitz v. City of Cleveland*, 763 Fed. App'x 490, 493 (6th Cir. 2019) (internal citations and punctuation omitted). "The doctrine of qualified immunity insulates state actors from liability in close-call situations." *Lemmon v. City of Akron, Ohio*, 768 Fed. App'x 410, 414 (6th Cir. 2019).

The Fourth Amendment requires probable cause to justify arresting an individual. *Barton v. Martin*, 949 F.3d 938, 950-51 (6th Cir. 2020). "This rule applies irrespective of the seriousness of the crime." *Wheeler v. Newell*, 407 F. App'x 889, 891 (6th Cir. 2011). Indeed, "the Fourth Amendment permits a police officer to effect a custodial arrest of someone for a misdemeanor parking violation, even though the offense is not one that permits the violator's arrest under state law." *U.S. v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003). If probable cause exists for any charged offense, a Fourth Amendment claim for false arrest will fail. *See Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. 2019) ("If probable cause exists to arrest the suspect for any of the charged offenses, then the false arrest claim must fail."); *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) ("To the extent probable cause exists for any one of these charges, the arrest was lawful and our analysis is complete."); *Freeman v. Troutt*, 2012 WL 2565070, *9 (M.D. Tenn. June 29, 2012) ("Within the Sixth Circuit, when a plaintiff is arrested on multiple charges at the same time, he does not have a claim for false arrest if probable cause exists for at least one of the charges on which plaintiff was arrested."); *Wright v. City of Euclid*, 962 F.3d 852, 873 (6th Cir. 2020) (same).

The Supreme Court of the United States held over 20 years ago that a warrantless arrest based on probable cause for a fine-only misdemeanor offense committed in the officer's presence is constitutional. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). If probable cause exists, even a "foolish" or "unnecessary minor-offense arrest[]" does not give rise to a Fourth Amendment violation. *See id.* at 353-54. The Sixth Circuit has very recently applied the *Atwater* holding to find probable cause for an arrest based on violation of a city noise ordinance. *United States v. Jones*, 2022 WL 17592832 (Dec. 13, 2022) (officers had probable cause to arrest individual who violated city noise ordinance in their presence, and thus, *a fortiori*, had sufficient cause to stop him); *see also U.S. v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012) ("There is no dispute that [officer] had probable cause to stop and arrest [driver] for failing to dim the high-beam headlights in the face of oncoming traffic.").

Webb disputes that he failed to observe the stop sign. But there is video evidence in this case, so "the court must 'view the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)). The video makes clear, beyond reasonable dispute, that Mr. Webb failed to come to a complete stop at the stop sign. *See Barton*, 949 F.3d at 950 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)) (existence of probable cause is a jury question unless "there is only one reasonable determination possible"). Webb says the view of his vehicle is obstructed at one point, consistent with his contention that he stopped. But the video shows the vehicle was continuously moving forward, with at most a slight pause. [Dashcam Footage at 15:20:07:35]. And "[r]olling through a stop sign without completely stopping is a misdemeanor in Tennessee." *United States v. Macklin*, 819 F. App'x 372, 375 (6th Cir. 2020) (officer had probable cause to initiate stop).

Law enforcement officers are entitled to qualified immunity if they reasonably, even erroneously, believe an arrest is lawful in light of the information they have at the time. *Id.* The arresting officer's state of mind – except for facts he knows – "is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* To the contrary, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 814 (1996)). For Fourth Amendment purposes, Davis's subjective intent for the arrest is simply irrelevant, whether it was concern for his own safety or simply irritation with Webb.

Plaintiff also argues there cannot be probable cause because Davis "planted" or fabricated evidence. He compares Davis's sworn complaint affidavit, which states he arrested Mr. Webb for refusing to provide his driver's license, registration, and proof of insurance, with the video evidence establishing that Webb had in fact just provided his license when Davis chose to arrest him. Plaintiff also shows that Davis testified under oath that he arrested Mr. Webb because he was "reaching in between his seats" and Davis thought he might be reaching for a weapon. [Doc. 46-2 at 50]. Plaintiff contends the video evidence "proves that Officer Davis is lying." [Doc. 46 at 18].

Viewing the facts as depicted in the video, it is certainly questionable that a reasonable officer would believe Mr. Webb was reaching for a weapon.[3] It is also clear that Webb had just

---

[3] Indeed, Webb told Davis that his license was in a bag in the center of the seat, got permission to get the bag, and retrieved his license from the bag. He gave Davis the license, and then said Davis was "snatching" it, at which point Davis began to direct him to exit the vehicle. The video shows that Mr. Webb was holding the bag with both hands and returning it to the other seat, not "reaching" for something. Both his hands are visible for all but a fraction of a second in the motion of returning the bag to the other seat, shifting it from both hands to his right hand. He is looking straight ahead or directly at Davis as Davis begins to tell him to exit the vehicle. Defendants do not allege that anything else about the interaction or circumstances of the arrest indicated that Mr. Webb posed any threat.

handed Davis his license when Davis pulled him from his vehicle. But neither of these disputes change the fact that Davis had probable cause to arrest Webb for the stop sign offense. And "[a]s long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward." *Howse v. Hodus*, 953 F.3d 402, 409 (6th Cir. 2020). "What matters is the validity of the *arrest* (the seizure) and not the validity of every *charge* (the potential justifications for the seizure)." *Id.* Davis's testimony that he arrested Mr. Webb for disorderly conduct is likewise irrelevant, because an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Finally, Plaintiff's arrest was not conducted in an extraordinary manner, unusually harmful to his individual privacy or physical interests. *See Jones*, 2022 WL 17592832 at *3 (vehicular stop to issue citation for a misdemeanor offense committed in officer's presence is neither unusually harmful nor extraordinary); *Atwater*, 532 U.S. at 355 ("The arrest and booking were inconvenient and embarrassing to Atwater, but not so extraordinary as to violate the Fourth Amendment."). The record demonstrates that Officer Davis had probable cause to believe that Mr. Webb committed a traffic offense, and accordingly, Plaintiff cannot show that Davis violated his Fourth Amendment right to be free from arrest without probable cause. Davis is therefore entitled to qualified immunity on Plaintiff's Fourth Amendment claim against him, which will be **DISMISSED**.

### b. Qualified Immunity – Selective Enforcement Claim

Next, Officer Davis argues he is entitled to qualified immunity as to Plaintiff's claim that he was arrested without due process. Again, all parties view this as a selective enforcement claim, analyzed under the Equal Protection Clause. Plaintiff is African American, and Davis is Caucasian. Plaintiff alleges his arrest was motivated by racial animus and/or was because of his race. Because

Davis has raised qualified immunity, Plaintiff bears the burden of showing that he is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). Plaintiff has not shown that similarly situated individuals of a different race were not prosecuted, so Davis is entitled to judgment on this claim.

The Government retains broad discretion in deciding whom to arrest and prosecute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). This discretion is subject to constitutional restraints, including the Equal Protection Clause requirement that similarly situated persons be treated alike by state actors. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Because "the enforcement of an otherwise valid law can be a means of violating constitutional rights by invidious discrimination," courts have developed the doctrine of selective enforcement. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (quoting *Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir. 1996)).

To state a claim for selective prosecution/enforcement, a plaintiff must establish three elements. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). First, the state actor must single out a person belonging to an identifiable group for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. *Id.* Second, he must initiate prosecution with a discriminatory purpose. *Id.* Third, the prosecution must have a discriminatory effect on the *group* to which the individual belongs. *Id.* There is a "strong presumption that state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Id.*

As to the first element, "it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside [his] category were not prosecuted." *Stemler*,

126 F.3d at 873; *Cunningham v. Sisk*, 2003 WL 23471541, *9 (E.D. Tenn. Dec. 4, 2003) (plaintiff was required to show that similarly situated persons outside his race were not arrested, searched, and/or given traffic citations for speeding under comparable circumstances). A plaintiff can satisfy this element by (i) identifying a similarly situated individual who was not investigated, or (ii) through the use of statistical or other evidence that "addresses the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir. 2001)). Plaintiff has not made this showing.

The record shows that Officer Davis charged eight individuals with disorderly conduct in the year prior to Webb's arrest. [Doc. 37-4 at 5]. Davis's discovery responses indicate that seven of these individuals were white and one (Plaintiff) was black. [*Id.* at 6]. Mr. Webb was, however, the only one of these eight people to be arrested following a traffic stop. [*Id.*]. In other words, none of the other seven individuals were similarly situated to Mr. Webb. Moreover, the prima facie case for selective enforcement requires identifying a similarly situated individual who was *not* arrested or prosecuted, and Plaintiff has only presented evidence of individuals outside his race who *were* arrested, all of whom were white. There is nothing in the record regarding similar traffic stops made by Davis and whether an arrest was made following those stops.

As to the traffic citation, Davis testified that he had never arrested someone for just running a stop sign. [Doc. 46-2 at 99]. Indeed, Davis testified that he would not have arrested Webb for only the stop sign violation, but arrested him for disorderly conduct. [*Id.*]. He testified he had never heard of anyone being arrested for just running a stop sign. [*Id.* at 100]. Plaintiff asks the Court to infer that, based on the demographics of the area, Mr. Webb was treated differently than similarly situated individuals of a different race. [Doc. 46 at 20]. Plaintiff does not point to anything in the

15

Case 1:20-cv-00180-CEA-CHS   Document 63   Filed 12/30/22   Page 15 of 19   PageID #: 1117

record to support this assumption. The Court must construe all inferences from the evidence in the light most favorable to the non-moving party. But it cannot assume facts that are not in evidence.

Specifically, the Court cannot assume that Officer Davis has stopped drivers who are not African American for running a stop sign. While it seems likely that this has occurred, Plaintiff has to come forward with "clear evidence" that Davis improperly discharged his official duties. *Stemler*, 126 F.3d at 873. Similarly, Plaintiff states that Marion County is "known" to have a very small minority population, but puts forth no evidence on this front. Accordingly, he has not made the showing required for the first element of his selective enforcement claim.

Even if Plaintiff could satisfy the first element, he cannot satisfy the second – that the arrest was made with a discriminatory purpose. Plaintiff's argument is that Davis singled him out for arrest for a stop sign violation, leading to an inference of racial animus. [Doc. 46 at 20]. But the Sixth Circuit has rejected similar arguments. In *Gardenhire v. Schubert*, the plaintiffs argued that the police had no logical reason to prosecute them rather than a third person, so the arrest must have been motivated by their interracial marriage. 205 F.3d 303, 320 (6th Cir. 2000). The Sixth Circuit opined that "[w]hile such reasoning would be sufficient in establishing a *prima facie* Title VII case, the standard for selective enforcement is much more demanding." *Id.* Plaintiff points to no other evidence of discrimination by Davis during his interaction with Webb.[4]

Next, Plaintiff contends that certain social media posts allegedly made by Davis demonstrate racial animus. These posts are undoubtedly racially insensitive, but they are also riddled with evidentiary issues. The posts are screenshots from Facebook, submitted only with the declaration of Mr. Webb that he located them online. [Doc. 46-4 at 2]. Officer Davis was not

---

[4] Plaintiff does contend that Officer Davis called him "buddy," which he believes is a racial slur. [Doc. 46 at 5]. While otherwise innocuous words can certainly be used in a racially-charged manner, the Court simply cannot find that a word as commonly and widely used as "buddy" is "clear evidence" of racial animus.

16

questioned about the posts in his deposition and there is nothing in the record that establishes the account in question belongs to or is used by Davis. The posts are not dated, but appear to have been made nearly a year after Mr. Webb's arrest.[5] In short, Plaintiff has not established a connection between the posts and his arrest, even assuming they are admissible evidence. Plaintiff does not point to any other evidence of discriminatory intent. In addition, Plaintiff has made no showing at all on the third element of his claim – that the prosecution has a discriminatory effect on the *group* to which the individual belongs.

Plaintiff has not carried his burden of demonstrating that Davis is not entitled to qualified immunity because he has not shown that his rights under the Equal Protection Clause were violated. He has not overcome the "strong presumption" that Davis properly discharged his duties, has not provided "clear" evidence of discriminatory intent, and has not shown that similarly situated individuals of a different race were treated differently than he was. Accordingly, Davis is entitled to qualified immunity on Plaintiff's selective enforcement claim, which will be **DISMISSED**.

    c. *Monell* **Liability**

The City of Jasper seeks summary judgment as to all claims against it, arguing that Plaintiff cannot show a violation of the Equal Protection Clause or the Fourth Amendment. [Doc. 35]. To hold a municipality liable for the conduct of its agents or employees, a claimant must show first that a constitutional violation occurred, and second, that the municipality is responsible for that violation. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). "A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers."

---

[5] The post by "Brian Davis" is dated "May 10" while the original post is dated "March 22," and references "Day # 5 of Quarantine." [Doc. 46-4]. As all are aware, in March 2020, the Covid-19 pandemic led to business shutdowns and widespread requirements to shelter in place.

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004). Because Plaintiff has not shown that Davis violated his constitutional rights, the City of Jasper cannot be held liable for a violation. Accordingly, Webb's federal claims against the City of Jasper will be **DISMISSED**.

### d. State Law Claims

Plaintiff also asserts state law claims for false arrest/imprisonment, battery, assault, malicious prosecution, and intentional infliction of emotional distress. The Court may decline to exercise supplemental jurisdiction over state law claims after it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because all Plaintiffs' federal claims will be dismissed, the Court declines to exercise supplemental jurisdiction over his state law claims. Accordingly, Plaintiff's state law claims for false arrest/imprisonment, battery, assault, malicious prosecution, and intentional infliction of emotional distress will be **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

Accordingly, the Motion for Summary Judgment [Doc. 34] of the City of Jasper is **GRANTED**. Plaintiff's Fourth Amendment false arrest claim and Equal Protection claim against the City of Jasper, brought under 42 U.S.C. § 1983, are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims against the City are **DISMISSED WITHOUT PREJUDICE**.

The Motion for Summary Judgment [Doc. 37] by Brian Davis Motion is **GRANTED**. Plaintiff's Fourth Amendment false arrest claim and Equal Protection claim against Davis, brought

under 42 U.S.C. § 1983, are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims against Davis are **DISMISSED WITHOUT PREJUDICE**.

A separate judgment shall enter.

**SO ORDERED**.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

19

Case 1:20-cv-00180-CEA-CHS   Document 63   Filed 12/30/22   Page 19 of 19   PageID #: 1121